1  JOSEPH T. MCNALLY
   United States Attorney,
2  Acting Under Authority Conferred
   by 28 U.S.C. § 515
3  MACK E. JENKINS
   Assistant United States Attorney
4  Chief, Criminal Division
   CHARLES E. PELL (Cal. Bar No. 210309)
5  MELISSA S. RABBANI (Cal. Bar No. 283993)
   Assistant United States Attorneys
6  Santa Ana Branch Office
        United States Courthouse
7       411 West Fourth Street, Suite 8000
        Santa Ana, California 92701
8       Telephone: (714) 338-3500
        Facsimile: (714) 338-3561
9       E-mail:    charles.e.pell2@usdoj.gov
                   Melissa.rabbani@usdoj.gov
10
   Attorneys for Plaintiff
11 UNITED STATES OF AMERICA

**FILED**
CLERK, U.S. DISTRICT COURT

**8/16/23**

CENTRAL DISTRICT OF CALIFORNIA
BY:____EB____DEPUTY

12              UNITED STATES DISTRICT COURT

13          FOR THE CENTRAL DISTRICT OF CALIFORNIA

14                   SOUTHERN DIVISION

15 UNITED STATES OF AMERICA,        No. 8:23-cr-00114-JWH

16           Plaintiff,             PLEA AGREEMENT FOR DEFENDANT
                                    HARISH SINGH SIDHU
17           v.

18 HARISH SINGH SIDHU,
    aka "Harry Sidhu,"
19
             Defendant.
20

21

22      1.    This constitutes the plea agreement between HARISH SINGH

23 SIDHU, also known as "Harry Sidhu," ("defendant") and the United

24 States Attorney's Office for the Central District of California (the

25 "USAO") in the investigation of public corruption within the City of

26 Anaheim.  This agreement is limited to the USAO and cannot bind any

27 other federal, state, local, or foreign prosecuting, enforcement,

28 administrative, or regulatory authorities.

## DEFENDANT'S OBLIGATIONS

2.   Defendant agrees to:

a.   Give up the right to indictment by a grand jury and, at the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to a four-count information in the form attached to this agreement as Exhibit A or a substantially similar form, which charges defendant with Obstruction of Justice (Destruction, Alteration, Or Falsification Of Records In Federal Investigations), in violation of 18 U.S.C. § 1519 (count one); Wire Fraud, in violation of 18 U.S.C. § 1343 (count two); and False Statement to Federal Agency, in violation of 18 U.S.C. § 1001(a)(2) (counts three and four).

b.   Not contest facts agreed to in this agreement.

c.   Abide by all agreements regarding sentencing contained in this agreement.

d.   Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e.   Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f.   Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

g.   Pay the applicable special assessments at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

h.   Defendant agrees that any and all criminal debt

1  ordered by the Court will be due in full and immediately.  The

2  government is not precluded from pursuing, in excess of any payment

3  schedule set by the Court, any and all available remedies by which to

4  satisfy defendant's payment of the full financial obligation,

5  including referral to the Treasury Offset Program.

6        i.   Complete the Financial Disclosure Statement on a form

7  provided by the USAO and, within 30 days of defendant's entry of a

8  guilty plea, deliver the signed and dated statement, along with all

9  of the documents requested therein, to the USAO by either email at

10 usacac.FinLit@usdoj.gov (preferred) or mail to the USAO Financial

11 Litigation Section at 300 North Los Angeles Street, Suite 7516, Los

12 Angeles, CA 90012.  Defendant agrees that defendant's ability to pay

13 criminal debt shall be assessed based on the completed Financial

14 Disclosure Statement and all required supporting documents, as well

15 as other relevant information relating to ability to pay.

16        j.   Authorize the USAO to obtain a credit report upon

17 returning a signed copy of this plea agreement.

18        k.   Consent to the USAO inspecting and copying all of

19 defendant's financial documents and financial information held by the

20 United States Probation and Pretrial Services Office.

21                       THE USAO'S OBLIGATIONS

22 3.   The USAO agrees to:

23        a.   Not contest facts agreed to in this agreement.

24        b.   Abide by all agreements regarding sentencing contained

25 in this agreement.

26        c.   At the time of sentencing, provided that defendant

27 demonstrates an acceptance of responsibility for the offenses up to

28 and including the time of sentencing, recommend a two-level reduction

1  in the applicable Sentencing Guidelines offense level, pursuant to

2  U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an

3  additional one-level reduction if available under that section.

4         d.   Recommend that defendant be sentenced to a term of

5  imprisonment no higher than the low end of the applicable Sentencing

6  Guidelines range, provided that the offense level used by the Court

7  to determine that range is 11 or higher and provided that the Court

8  does not depart downward in offense level or criminal history

9  category.  For purposes of this agreement, the low end of the

10  Sentencing Guidelines range is that defined by the Sentencing Table

11  in U.S.S.G. Chapter 5, Part A, without regard to reductions in the

12  term of imprisonment that may be permissible through the substitution

13  of community confinement or home detention as a result of the offense

14  level falling within Zone B or Zone C of the Sentencing Table.

15         e.   Except for criminal tax violations (including

16  conspiracy to commit such violations chargeable under 18 U.S.C.

17  § 371), not further criminally prosecute defendant for violations of

18  federal criminal law arising out of defendant's conduct described in

19  the agreed-to factual basis set forth in paragraph 15 below.

20  Defendant understands that the USAO is free to criminally prosecute

21  defendant for any other unlawful past conduct or any unlawful conduct

22  that occurs after the date of this agreement.  Defendant agrees that

23  at the time of sentencing the Court may consider the uncharged

24  conduct in determining the applicable Sentencing Guidelines range,

25  the propriety and extent of any departure from that range, and the

26  sentence to be imposed after consideration of the Sentencing

27  Guidelines and all other relevant factors under 18 U.S.C. § 3553(a).

28

## NATURE OF THE OFFENSES

4.   Defendant understands that for defendant to be guilty of the crime charged in count one of the information, that is, Obstruction of Justice — Destruction, Alteration or Falsification of Records in Federal Investigations, in violation of Title 18, United States Code, Section 1519, the following must be true: (1) Defendant knowingly altered, destroyed, concealed, or falsified a record, document, or tangible object; and (2) Defendant acted with the intent to impede, obstruct, or influence an actual or contemplated investigation of a matter within the jurisdiction of any department or agency of the United States.

5.   Defendant understands that for defendant to be guilty of the crime charged in count two of the information, that is, Wire Fraud, in violation of Title 18, United States Code, Section 1343, the following must be true: (1) Defendant knowingly devised a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises; (2) The statements made as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property; (3) Defendant acted with the intent to defraud, that is, the intent to deceive and cheat; and (4) Defendant used, or caused to be used, an interstate wire communication to carry out or attempt to carry out an essential part of the scheme.

6.   Defendant understands that for defendant to be guilty of the crimes charged in counts three and four of the information, that is, False Statement To Federal Agency, in violation of Title 18, United States Code, Section 1001(a)(2), the following must be true:

1  (1) Defendant made a false statement; (2) The statement was made in a
2  matter within the jurisdiction of a federal executive agency;
3  (3) Defendant acted willfully; that is, the defendant acted
4  deliberately and with knowledge both that the statement was untrue
5  and that his conduct was unlawful; and (4) The statement was material
6  to the activities or decisions of a federal executive agency; that
7  is, it had a natural tendency to influence, or was capable of
8  influencing, the agency's decisions or activities.

9                        PENALTIES AND RESTITUTION

10      7.   Defendant understands that the statutory maximum sentence
11  that the Court can impose for a violation of Title 18, United States
12  Code, Section 1519, is: 20 years of imprisonment; a three-year period
13  of supervised release; a fine of $250,000 or twice the gross gain or
14  gross loss resulting from the offense, whichever is greatest; and a
15  mandatory special assessment of $100.

16      8.   Defendant understands that the statutory maximum sentence
17  that the Court can impose for a violation of Title 18, United States
18  Code, Section 1343, is: 20 years of imprisonment; a three-year period
19  of supervised release; a fine of $250,000 or twice the gross gain or
20  gross loss resulting from the offense, whichever is greatest; and a
21  mandatory special assessment of $100.

22      9.   Defendant understands that the statutory maximum sentence
23  that the Court can impose for each violation of Title 18, United
24  States Code, Section 1001(a)(2), is: five years of imprisonment; a
25  three-year period of supervised release; a fine of $250,000 or twice
26  the gross gain or gross loss resulting from the offense, whichever is
27  greatest; and a mandatory special assessment of $100.

28      10.  Defendant understands, therefore, that the total maximum

6

1  sentence for all offenses to which defendant is pleading guilty is:

2  50 years of imprisonment; a three-year period of supervised release;

3  a fine of $1,000,000 or twice the gross gain or gross loss resulting

4  from the offenses, whichever is greatest; and a mandatory special

5  assessment of $400.

6      11.  Defendant understands that defendant will be required to

7  pay full restitution to the victim(s) of the offenses to which

8  defendant is pleading guilty.  The parties currently believe that the

9  applicable amount of restitution for count two is approximately

10 $15,887.50, which as of the date of this agreement, defendant has

11 already paid to the victim, but recognize and agree that this amount

12 could change based on facts that come to the attention of the parties

13 prior to sentencing.

14     12.  Defendant understands that supervised release is a period

15 of time following imprisonment during which defendant will be subject

16 to various restrictions and requirements.  Defendant understands that

17 if defendant violates one or more of the conditions of any supervised

18 release imposed, defendant may be returned to prison for all or part

19 of the term of supervised release authorized by statute for the

20 offense that resulted in the term of supervised release, which could

21 result in defendant serving a total term of imprisonment greater than

22 the statutory maximum stated above.

23     13.  Defendant understands that, by pleading guilty, defendant

24 may be giving up valuable government benefits and valuable civic

25 rights, such as the right to vote, the right to possess a firearm,

26 the right to hold office, and the right to serve on a jury. Defendant

27 understands that he is pleading guilty to a felony and that it is a

28 federal crime for a convicted felon to possess a firearm or

7

1  ammunition.  Defendant understands that the convictions in this case
2  may also subject defendant to various other collateral consequences,
3  including but not limited to revocation of probation, parole, or
4  supervised release in another case and suspension or revocation of a
5  professional license.  Defendant understands that unanticipated
6  collateral consequences will not serve as grounds to withdraw
7  defendant's guilty pleas.

8      14.  Defendant and his counsel have discussed the fact that, and
9  defendant understands that, if defendant is not a United States
10 citizen, the convictions in this case makes it practically inevitable
11 and a virtual certainty that defendant will be removed or deported
12 from the United States.  Defendant may also be denied United States
13 citizenship and admission to the United States in the future.
14 Defendant understands that while there may be arguments that
15 defendant can raise in immigration proceedings to avoid or delay
16 removal, removal is presumptively mandatory and a virtual certainty
17 in this case.  Defendant further understands that removal and
18 immigration consequences are the subject of a separate proceeding and
19 that no one, including his attorney or the Court, can predict to an
20 absolute certainty the effect of his convictions on his immigration
21 status.  Defendant nevertheless affirms that he wants to plead guilty
22 regardless of any immigration consequences that his pleas may entail,
23 even if the consequence is automatic removal from the United States.

24                              FACTUAL BASIS

25     15.  Defendant admits that defendant is, in fact, guilty of the
26 offenses to which defendant is agreeing to plead guilty.  Defendant
27 and the USAO agree to the statement of facts provided below and agree
28 that this statement of facts is sufficient to support pleas of guilty

8

1  to the charges described in this agreement and to establish the
2  Sentencing Guidelines factors set forth in paragraph 17 below but is
3  not meant to be a complete recitation of all facts relevant to the
4  underlying criminal conduct or all facts known to either party that
5  relate to that conduct.

6       At all times relevant to this plea agreement, defendant was the
7  Mayor of the City of Anaheim, California (the "City"), having been
8  elected to that position in 2018.  Defendant previously served as a
9  member of the Anaheim City Council ("City Council") since 2004.
10  Defendant resigned as City Mayor in May 2022, shortly after the
11  Federal Bureau of Investigation's ("FBI") public corruption
12  investigation related to the City became public.

13       In around July 2020, the City was negotiating the sale of Angel
14  Stadium with the Los Angeles Angels professional baseball team and
15  SRB Management (collectively "the Angels").  Defendant sought out and
16  became a member of the City's negotiating team for the stadium sale.
17  Defendant provided confidential inside information belonging to the
18  City – including confidential negotiation information – to then-CEO
19  of the Anaheim Chamber of Commerce, Todd Ament, and to a consultant
20  working for the Angels ("Angels consultant"), so that the Angels
21  could buy Angel Stadium on terms beneficial to the Angels.  Defendant
22  secretly provided that information, which he had received in his
23  position as City Mayor.  Fifteen months after defendant secretly
24  provided that confidential information to the Angels consultant and
25  Ament, federal law enforcement covertly recorded defendant stating
26  that he expected a $1,000,000 campaign contribution from the Angels
27  after the Angels succeeded in buying Angel Stadium from the City.

28       Defendant knowingly destroyed multiple email messages and

1  documents related to this conduct, which constituted federal
2  obstruction of justice because defendant deleted those email messages
3  with the intent to impede and obstruct the FBI's investigation of
4  public corruption surrounding the City's potential sale of Angel
5  Stadium.  One of the email messages that defendant deleted was an
6  email he had sent on July 21, 2020 to the Angels consultant and
7  Ament, which was entitled "4844-8343-9299.2 Key Issues – Stadium
8  Transaction Agreement.docx."  That email message included an
9  attachment drafted by attorneys for the City, which contained
10 confidential negotiation information related to the potential sale of
11 Angel Stadium, including discussion of issues related to price and
12 other purchase/sale terms.  For example, the section entitled "Lease
13 Assignment: Parking" in that document advised: "[The Angels]
14 eliminate the requirement that they maintain at least 12,500 parking
15 spaces –so upon closing they could immediately amend the lease to
16 limit their parking obligation and then flip the land for millions
17 more than they paid for it.  For example, reducing their parking
18 obligation by 4,000 spaces would translate to $64M in increased land
19 value. … [T]he City has publicly acknowledged that the purchase price
20 would be much higher without this obligation."  Defendant was using
21 the Angels consultant and Ament to provide that confidential inside
22 information to the Angels so that the Angels could use that
23 information in the negotiations with the City to purchase Angel
24 Stadium on terms beneficial to the Angels.
25      Defendant also deleted an email message that the Angels
26 consultant had sent to defendant, two City Council members, two City
27 employees including the Chief Communications Officer, the President
28 of the Angels, a Senior Vice President of the Angels, Ament, and

others on September 20, 2020, entitled "Angels Deal Debate/Council Prep – ROUND 1." This email used the personal email addresses of defendant, the two City Council members, and the city staff, rather than their City-provided official email addresses. That email message included an attachment entitled "Angels Council Debate Prep.docx," which listed individuals who would be participating in mock City Council meetings about the Angel Stadium sale in advance of the actual City Council meeting for that proposed sale, including but not limited to defendant, two then-current City Council members, two City employees, the Angels consultant, Ament, the President of the Angels, and an attorney for the Angels. It also detailed items for the mock City Council meeting sessions, scheduled for the following day, September 21, 2020:

> Session 1
> 1. We will run through a mock Council Session straight through one time at the start to identify pitfalls and areas of vulnerability
> 2. We will then do a debrief and make notes for areas of strength, vulnerability, and areas needed for improvement.
> 3. Time permitting, we will do a second run through, stopping at key points to emphasize key moments.
>
> Between Sessions 1 & 2
> 1. Participants will be asked to study their roles and come prepared for Session 2 to be at the top of their game.
> 2. [Angels] team available to help develop "zingers", responses, and other points to improve performance.
>
> . . .
>
> Session 3
> 1. This is the day of the Council Meeting
> 2. We will do a quick run through as time permits, focusing on key moments as needed.

In addition to the above, the "Angels Council Debate Prep" document also detailed topics on which each participant should focus, such as:

> Mayor Harry Sidhu
> • Mayor Sidhu will play himself
> • He will preside over the meeting

11

- He is expected to be a strong defender of the deal and know its terms, at least at the policy level, well.

Mayor Pro Tem []
- Plays himself
- Focus on benefits to D5
  - o Parks
  - o Grocery Store
- Expected to be focus of attacks by Moreno due to Election
- Focus on Angels charity
- Focus on union jobs
- Focus on Anaheim History

Council Member []
- Plays himself
- Focus on benefits to Whole City
  - o Keep the Angels
  - o Economic Development & Jobs
  - o Focus on Taxpayer benefits, such as Privatizing Stadium
- Support Mayor on Parliamentary Angles
- Attack Moreno on Vulnerabilities

Previously, in 2019, defendant had provided a confidential appraisal range related to Angel Stadium to Ament to give to the Angels, months before the appraisal was made public.

Approximately 16 months after defendant provided the confidential inside information to the Angels, he was secretly recorded stating that he expected to receive a large campaign contribution from the Angels after the Angel Stadium sale was completed; that is, defendant expected $1 million to be directed to a political action committee (PAC) to be spent on defendant's behalf during the next election. During the investigation, FBI agents secretly recorded multiple statements by defendant on that topic. For example, on December 6, 2021, defendant made the following statement, which was surreptitiously recorded for the FBI:

Because I, I've said, you gotta at least, minimum
of a million dollars to come up with my election. They
have to. And of course, you know, . . . if Angels
project would conclude next year is approved

12

1    hopefully, we'll push for them at least half a million

2    dollars.  You know, for [Angel's representative] to

3    say "no" is bad, for them not to say no on that.

4  During a similar discussion on January 28, 2022, which was also

5  covertly recorded for the FBI, defendant stated:

6         Because I am hoping to get at least a million

7    from I'm going to be pushing it. [Angel's

8    representative] actually asked me. He said, "What can

9    I do for your election?" I said, "Let me finish your

10   deal first, and then we'll talk about that."

11        . . .

12        So I'm going to be asking for a million dollars

13   from him. . . . For my election.

14        During a City Council meeting in September 2020, defendant voted

15  in favor of the final terms of the Angel Stadium deal.  Both at that

16  time and later, defendant failed to notify other City Councilmembers

17  or the public that he had provided confidential inside negotiation

18  information to the Angels.  Also, at no time after that vote did

19  defendant notify other City Councilmembers or the public that he

20  expected to receive a $1 million campaign contribution from the

21  Angels after the City's sale of Angel Stadium to the Angels.

22  Defendant deleted the emails between him and the Angels consultant

23  and Ament, including his July 21, 2020 email and its attachment,

24  knowingly and willfully for the purpose of impeding and obstructing

25  an ongoing FBI investigation.  At the time he deleted the email

26  messages, it was reasonably foreseeable to defendant that the FBI

27  would be investigating whether federal law was violated during       ,

28  negotiations related to the Angel Stadium sale.  By deleting the

                                    13

1   email messages, defendant destroyed them because his email service

2   permanently deleted emails in the deleted folder after 30 days.

3        Defendant also lied about the Angel Stadium sale negotiations

4   and related matters when FBI agents interviewed him on May 12, 2022,

5   in Anaheim, California.   During that interview, defendant falsely

6   stated that he was expecting "nothing" from the Angels after the

7   Angel Stadium sale, when in truth, he was expecting to receive a $1

8   million campaign contribution for his election after the sale.

9   Defendant also falsely stated that he does not "conduct any City

10  Business" from his personal email.   Not only did defendant conduct

11  City business using his personal email, but he also communicated with

12  some City staff using that staff's personal email, purposely avoiding

13  using the staff member's official City email address.   For example,

14  on October 22, 2020, using his personal email, defendant sent an

15  email message wherein he wrote: "[Angels consultant] and Todd

16  [Ament]: please do NOT Reply All to this email - sent to WRONG CITY

17  EMAIL FOR [City employee]. Please ONLY use PERSONAL EMAIL FOR [City

18  employee] - []@gmail.com. Thanks."   Defendant also falsely stated

19  that he did not recall ever providing information about the Stadium

20  sale to the Angels consultant during negotiations over that sale.

21  Defendant knowingly and willfully made these false statements with

22  knowledge both that the statements were untrue and that his conduct

23  was unlawful.   Defendant's false statements were material to the then

24  on-going FBI investigation of defendant's possible violation of

25  federal law, including public corruption.

26       Additionally, from October 2020 to early November 2020,

27  defendant knowingly, intentionally, and with the intent to defraud,

28  devised and executed a scheme to defraud the State of California of

14

more than $15,000 of sales tax revenue.  In October 2020, defendant
purchased a used helicopter for approximately $205,000.  At that
time, defendant fraudulently represented that he resided in Arizona,
even though he lived in Anaheim, California, and the helicopter was
hangared in Chino, California.  Defendant used a mailing address in
Scottsdale, Arizona, which belonged to an Anaheim businessperson.
Defendant's false statement about his residency was material in that
it affected defendant's sales tax liability for the helicopter
purchase.  He made the false representation for the purpose of
avoiding a 7.75% sales tax imposed by the State of California.  Had
defendant truthfully reported that he resided in California,
defendant, as he well knew, would have incurred a $15,887 tax
liability.  On November 2, 2020, acting for the purpose of executing
the scheme to defraud the State of California, defendant caused the
transmission of an email message in interstate commerce from the
helicopter broker to the title company, which instructed that the
helicopter be registered in the State of Arizona.  Based upon his
fraudulent use of the Arizona address, defendant defrauded the State
of California of approximately $15,887 in California sales tax.

Defendant also provided false information to the Federal
Aviation Administration ("FAA") of the U.S. Department of
Transportation.  On November 10, 2020, defendant submitted FAA Form
8040-1, "Aircraft Registration Application," for the helicopter,
which defendant signed and certified as true.  Right above his
signature, the Form provided a warning that under federal law, any
false, misleading, or fraudulent statements or representations could
result in imprisonment and/or a fine.  Defendant falsely represented
on that form that his permanent mailing address was in Scottsdale,

1    Arizona, when in truth and fact, defendant lived in Anaheim,

2    California, and his permanent mailing address was in Anaheim,

3    California.  Defendant also provided that false address on FAA Form

4    8050-2, "Aircraft Bill of Sale."  Defendant knowingly and willfully

5    made these false statements and with knowledge that the statements

6    were false and his conduct was unlawful.  Defendant's false

7    statements were material to the operations of the FAA.

                        SENTENCING FACTORS

9        16.  Defendant understands that in determining defendant's

10   sentence the Court is required to calculate the applicable Sentencing

11   Guidelines range and to consider that range, possible departures

12   under the Sentencing Guidelines, and the other sentencing factors set

13   forth in 18 U.S.C. § 3553(a).  Defendant understands that the

14   Sentencing Guidelines are advisory only, that defendant cannot have

15   any expectation of receiving a sentence within the calculated

16   Sentencing Guidelines range, and that after considering the

17   Sentencing Guidelines and the other § 3553(a) factors, the Court will

18   be free to exercise its discretion to impose any sentence it finds

19   appropriate up to the maximum set by statute for the crimes of

20   conviction.

21       17.  Defendant and the USAO agree to the following applicable

22   Sentencing Guidelines factors:

23   Count One (Obstruction of Justice):

24       Base Offense Level:            14          U.S.S.G. § 2J1.2(a)

25   Count Two (Wire Fraud):

26       Base Offense Level:             7          U.S.S.G. § 2B1.1(a)

27       $15k < loss < $40k:            +4    U.S.S.G. § 2B1.1(b)(1)(C)

28   Count Three (False Statement to FAA):

                                16

| | | |
|---|---|---|
| 1 | Base Offense Level:              6 | U.S.S.G. § 2B1.1(a)(2) |
| 2 | $15k < loss < $40k:            +4 | U.S.S.G. § 2B1.1(b)(1)(C) |

3   Count Four (False Statement to FBI):

4       Base Offense Level:              6          U.S.S.G. § 2B1.1(a)(2)

5   For Count One, the parties stipulate that based upon the facts of the

6   case, Section 2J1.2(c)'s cross reference does not apply.  The parties

7   agree that the defendant is entitled to a one-level downward variance

8   under Section 3553(a) as recognition of defendant's early acceptance

9   of responsibility, based upon defendant's: (1) immediately resigning

10  from his position as Anaheim City Mayor upon public disclosure of the

11  FBI's investigation; (2) immediately paying to California the $15,887

12  in sales tax that he had evaded, upon public disclosure of the FBI's

13  investigation; and (3) entering this pre-indictment disposition,

14  which has a robust factual basis and waives most appellate rights.

15  The USAO will agree to a two-level downward adjustment for acceptance

16  of responsibility (and, if applicable, move for an additional one-

17  level downward adjustment under U.S.S.G. § 3E1.1(b)) only if the

18  conditions set forth in paragraph 3(c) are met and if defendant has

19  not committed, and refrains from committing, acts constituting

20  obstruction of justice within the meaning of U.S.S.G. § 3C1.1, as

21  discussed below.  Subject to paragraph 30 below, defendant and the

22  USAO agree not to seek, argue, or suggest in any way, either orally

23  or in writing, that any other specific offense characteristics,

24  adjustments, or departures relating to the offense level be imposed.

25  Notwithstanding the previous sentence, the government reserves the

26  right to argue that for Count One, the two-level increase under

27  Guidelines Section 2J1.1(b)(3) applies, and defendant reserves the

28  right to argue that proposed Guidelines Section 4C1.1 applies, if

17

that new Section is enacted by the U.S. Sentencing Commission before defendant's sentencing.  Pursuant to Guidelines Sections 3D1.1-3D1.5, the parties agree that, if the Court applies a 2-level increase under Section 2J1.1(b)(3), a one-level multiple count adjustment applies, but if the Court does not apply a two-level increase pursuant to Section 2J1.1(b)(3), a two-level multiple count adjustment applies. Defendant agrees, however, that if, after signing this agreement but prior to sentencing, defendant were to commit an act, or the USAO were to discover a previously undiscovered act committed by defendant prior to signing this agreement, which act, in the judgment of the USAO, constituted obstruction of justice within the meaning of U.S.S.G. § 3C1.1, the USAO would be free to seek the enhancement set forth in that section and to argue that defendant is not entitled to a downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1.

18.  Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

19.  Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

20.  Defendant understands that by pleading guilty, defendant gives up the following rights:

    a.  The right to persist in a plea of not guilty.

    b.  The right to a speedy and public trial by jury.

    c.  The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial.  Defendant

1  understands, however, that, defendant retains the right to be
2  represented by counsel -- and if necessary have the Court appoint
3  counsel -- at every other stage of the proceeding.

4          d.    The right to be presumed innocent and to have the
5  burden of proof placed on the government to prove defendant guilty
6  beyond a reasonable doubt.

7          e.    The right to confront and cross-examine witnesses
8  against defendant.

9          f.    The right to testify and to present evidence in
10 opposition to the charges, including the right to compel the
11 attendance of witnesses to testify.

12         g.    The right not to be compelled to testify, and, if
13 defendant chose not to testify or present evidence, to have that
14 choice not be used against defendant.

15         h.    Any and all rights to pursue any affirmative defenses,
16 Fourth Amendment or Fifth Amendment claims, and other pretrial
17 motions that have been filed or could be filed.

18                    WAIVER OF APPEAL OF CONVICTIONS

19     21.  Defendant understands that, with the exception of an appeal
20 based on a claim that defendant's guilty pleas were involuntary, by
21 pleading guilty defendant is waiving and giving up any right to
22 appeal defendant's convictions on the offenses to which defendant is
23 pleading guilty.  Defendant understands that this waiver includes,
24 but is not limited to, arguments that the statutes to which defendant
25 is pleading guilty are unconstitutional, and any and all claims that
26 the statement of facts provided herein is insufficient to support
27 defendant's pleas of guilty.

28

<u>WAIVER OF APPEAL AND COLLATERAL ATTACK</u>

22.  Defendant gives up the right to appeal all of the
following: (a) the procedures and calculations used to determine and
impose any portion of the sentence; (b) the term of imprisonment
imposed by the Court, including, to the extent permitted by law, the
constitutionality or legality of defendant's sentence, provided the
Court imposes a total term of imprisonment on all counts of
conviction of no more than 16 months or within a guideline range
corresponding to an offense level 12; (c) the fine imposed by the
Court, provided it is no more than $55,000; (d) the amount and terms
of any restitution order, provided it requires payment of no more
than $15,887.50; (e) the term of probation or supervised release
imposed by the Court, provided it is within the statutory maximum;
and (f) any of the following conditions of probation or supervised
release imposed by the Court: the conditions set forth in Second
Amended General Order 20-04 of this Court; the drug testing
conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the
alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

23.  Defendant also gives up any right to bring a post-
conviction collateral attack on the convictions or sentence,
including any order of restitution, except a post-conviction
collateral attack based on a claim of ineffective assistance of
counsel, a claim of newly discovered evidence, or an explicitly
retroactive change in the applicable Sentencing Guidelines,
sentencing statutes, or statutes of conviction.  Defendant
understands that this waiver includes, but is not limited to,
arguments that the statutes to which defendant is pleading guilty are
unconstitutional, and any and all claims that the statement of facts

20

1  provided herein is insufficient to support defendant's pleas of
2  guilty.

3      24.  The USAO agrees that, provided (a) all portions of the
4  sentence are at or below the statutory maximum specified above and
5  (b) the Court imposes a term of imprisonment of no less than 30
6  months of imprisonment, the USAO gives up its right to appeal any
7  portion of the sentence.

8  RESULT OF WITHDRAWAL OF GUILTY PLEA

9      25.  Defendant agrees that if, after entering guilty pleas
10  pursuant to this agreement, defendant seeks to withdraw and succeeds
11  in withdrawing defendant's guilty pleas on any basis other than a
12  claim and finding that entry into this plea agreement was
13  involuntary, then (a) the USAO will be relieved of all of its
14  obligations under this agreement; and (b) should the USAO choose to
15  pursue any charge that was either dismissed or not filed as a result
16  of this agreement, then (i) any applicable statute of limitations
17  will be tolled between the date of defendant's signing of this
18  agreement and the filing commencing any such action; and
19  (ii) defendant waives and gives up all defenses based on the statute
20  of limitations, any claim of pre-indictment delay, or any speedy
21  trial claim with respect to any such action, except to the extent
22  that such defenses existed as of the date of defendant's signing this
23  agreement.

24  EFFECTIVE DATE OF AGREEMENT

25      26.  This agreement is effective upon signature and execution of
26  all required certifications by defendant, defendant's counsel, and an
27  Assistant United States Attorney.

28

BREACH OF AGREEMENT

27. Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached. All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered guilty pleas pursuant to this agreement, defendant will not be able to withdraw the guilty pleas, and (b) the USAO will be relieved of all its obligations under this agreement.

28. Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

a. Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b. Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c. Defendant agrees that: (i) any statements made by

22

1  defendant, under oath, at the guilty plea hearing (if such a hearing

2  occurred prior to the breach); (ii) the agreed to factual basis

3  statement in this agreement; and (iii) any evidence derived from such

4  statements, shall be admissible against defendant in any such action

5  against defendant, and defendant waives and gives up any claim under

6  the United States Constitution, any statute, Rule 410 of the Federal

7  Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal

8  Procedure, or any other federal rule, that the statements or any

9  evidence derived from the statements should be suppressed or are

10  inadmissible.

11  <u>COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES</u>

12  <u>OFFICE NOT PARTIES</u>

13      29.  Defendant understands that the Court and the United States

14  Probation and Pretrial Services Office are not parties to this

15  agreement and need not accept any of the USAO's sentencing

16  recommendations or the parties' agreements to facts or sentencing

17  factors.

18      30.  Defendant understands that both defendant and the USAO are

19  free to: (a) supplement the facts by supplying relevant information

20  to the United States Probation and Pretrial Services Office and the

21  Court, (b) correct any and all factual misstatements relating to the

22  Court's Sentencing Guidelines calculations and determination of

23  sentence, and (c) argue on appeal and collateral review that the

24  Court's Sentencing Guidelines calculations and the sentence it

25  chooses to impose are not error, although each party agrees to

26  maintain its view that the calculations in paragraph 17 are

27  consistent with the facts of this case.  While this paragraph permits

28  both the USAO and defendant to submit full and complete factual

23

1   information to the United States Probation and Pretrial Services

2   Office and the Court, even if that factual information may be viewed

3   as inconsistent with the facts agreed to in this agreement, this

4   paragraph does not affect defendant's and the USAO's obligations not

5   to contest the facts agreed to in this agreement.

6        31.   Defendant understands that even if the Court ignores any

7   sentencing recommendation, finds facts or reaches conclusions

8   different from those agreed to, and/or imposes any sentence up to the

9   maximum established by statute, defendant cannot, for that reason,

10  withdraw defendant's guilty pleas, and defendant will remain bound to

11  fulfill all defendant's obligations under this agreement.  Defendant

12  understands that no one -- not the prosecutor, defendant's attorney,

13  or the Court -- can make a binding prediction or promise regarding

14  the sentence defendant will receive, except that it will be within

15  the statutory maximum.

16                      NO ADDITIONAL AGREEMENTS

17       32.   Defendant understands that, except as set forth herein,

18  there are no promises, understandings, or agreements between the USAO

19  and defendant or defendant's attorney, and that no additional

20  promise, understanding, or agreement may be entered into unless in a

21  writing signed by all parties or on the record in court.

22  ///

23  ///

24  ///

25

26

27

28

                                24

PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

33.   The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

JOSEPH T. MCNALLY
United States Attorney,
Acting Under Authority Conferred
by 28 U.S.C. § 515


_____          08,16,2023
CHARLES E. PELL                           Date
MELISSA S. RABBANI
Assistant United States Attorneys
Santa Ana Branch Office


_____          8-14-23
HARISH SINGH SIDHU                        Date
Defendant


_____          8/14/23
PAUL MEYER/CRAIG WILKE                    Date
Attorneys for Defendant
HARISH SINGH SIDHU

CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety.  I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney.  I understand the terms of this agreement, and I voluntarily agree to those terms.  I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a),

1  of relevant Sentencing Guidelines provisions, and of the consequences

2  of entering into this agreement.  No promises, inducements, or

3  representations of any kind have been made to me other than those

4  contained in this agreement.  No one has threatened or forced me in

5  any way to enter into this agreement.  I am satisfied with the

6  representation of my attorney in this matter, and I am pleading

7  guilty because I am guilty of the charges and wish to take advantage

8  of the promises set forth in this agreement, and not for any other

9  reason.

10

11  HARISH SINGH SIDHU                          Date  8-14-23
    Defendant

12

13                    CERTIFICATION OF DEFENDANT'S ATTORNEY

14      I am HARISH SINGH SIDHU's attorney.  I have carefully and

15  thoroughly discussed every part of this agreement with my client.

16  Further, I have fully advised my client of his rights, of possible

17  pretrial motions that might be filed, of possible defenses that might

18  be asserted either prior to or at trial, of the sentencing factors

19  set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines

20  provisions, and of the consequences of entering into this agreement.

21  To my knowledge: no promises, inducements, or representations of any

22  kind have been made to my client other than those contained in this

23  agreement; no one has threatened or forced my client in any way to

24  enter into this agreement; my client's decision to enter into this

25  agreement is an informed and voluntary one; and the factual basis set

26  ///

27  ///

28  ///

                                26

1   forth in this agreement is sufficient to support my client's entry of

2   guilty pleas pursuant to this agreement.

3                                                           8/14/23

4   PAUL MEYER/CRAIG WILKE                          Date
    Attorneys for Defendant
5   HARISH SINGH SIDHU

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28