| | |
|---|---|
| 1 | PAUL S. MEYER (51146) |
| 2 | pmeyer@meyerlawoc.com |
| | PAUL S. MEYER, A PROFESSIONAL CORP. |
| 3 | 695 Town Center Drive, Suite 875 |
| 4 | Costa Mesa, California 92626 |
| | Telephone (714) 754-6500 |
| 5 | Facsimile (714) 979-9047 |
| 6 | |
| 7 | CRAIG WILKE (150728) |
| | craig@craigwilkelaw.com |
| 8 | 305 N. Harbor Blvd., Suite 216 |
| | Fullerton, California 92832-1901 |
| 9 | Telephone (714) 870-8900 |
| 10 | Facsimile (714) 879-2278 |
| 11 | Attorneys for Defendant |
| 12 | HARISH SINGH SIDHU |

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 8:23-cr-00114-JWH |
| Plaintiff, | **DEFENDANT'S OJECTIONS TO PRESENTENCE REPORT AND POSITION RE: SENTENCING; EXHIBITS A-B** |
| v. | |
| HARISH SINGH SIDHU, | Sentencing Date: March 28, 2025 |
| Defendant. | Sentencing Time: 2:00 p.m. |

Defendant Harish Singh Sidhu, by and through his attorneys of record Paul S. Meyer and Craig Wilke, hereby files a memorandum setting forth his objections to the revised Presentence Report (ECF 32) and his position regarding sentencing; his

/

/

1 | personal statement attached hereto as Exhibit A; and statements of family members,
2 | friends, and colleagues attached hereto as Exhibit B.

                                        Respectfully submitted,

Dated: March 14, 2025                    /s/
                                      PAUL S. MEYER
                                      CRAIG WILKE
                                      Attorneys for Defendant
                                      Harish Singh Sidhu

# TABLE OF CONTENTS

| | |
|---|---:|
| INTRODUCTION | 6 |
| STATEMENT OF FACTS | 7 |
|     History and Characteristics of the Defendant | 7 |
|     Nature and Circumstances of the Offense | 8 |
|         *Counts One and Four: Destruction of Emails and False Statements Relating to the City's Agreement to Sell the Angels Stadium Site* | 8 |
|         *Counts Two and Three: Wire Fraud and False Statements Relating to the Evasion of Sales Tax on a Helicopter Purchase* | 10 |
| THE ADVISORY SENTENCING GUIDELINE RANGE IS 8-14 MONTHS AND THE FINE RANGE IS $4,000 TO $40,000 | 10 |
| THE COURT SHOULD SENTENCE MR. SIDHU TO THREE YEARS' PROBATION AND A $40,000 FINE | 12 |

# TABLE OF AUTHORITIES

**CASES**

*Gall v. United States*, 552 U.S. 38 (2007) ............................................................. 12

*Kimbrough v. United States*, 552 U.S. 85 (2007) ................................................... 12

*Nelson v. United States*, 555 U.S. 350 (2009) ........................................................ 12

*Rita v. United States*, 551 U.S. 338 (2007) ............................................................ 12

*Spears v. United States*, 555 U.S. 261 (2009) (per curiam) .................................... 13

*United States v. Carty*, 520 F.3d 984 (9th Cir. 2008) (en banc) .............................. 13

**STATUTES**

Sarbanes-Oxley Act of 2002, Pub. L. No. 107-56, § 805(a), 116 Stat. 745 .............. 10

Title 18, United States Code

    § 1001(a)(2) ............................................................................................... 6, 8, 10

    § 1343 ............................................................................................................. 6, 10

    § 1519 ............................................................................................................... 6, 8

    § 3553(a) ........................................................................................................ 12-13

    § 3561(c)(1) ......................................................................................................... 14

    § 3563(b) ............................................................................................................. 14

**SENTENCING GUIDELINES**

United States Sentencing Guidelines Manual (Nov. 2024)

    § 2J1.2(b)(3)(B) ........................................................................................ 6-7, 10-11

    § 3D1.4 ................................................................................................................ 11

    § 3E1.1 ................................................................................................................. 11

    § 4C1.1(a) ............................................................................................................ 11

    Chapter 5, Part A (Sentencing Table) .................................................................. 12

    § 5B1.1(a)(2) ....................................................................................................... 14

    § 5E1.2(a)(3) ....................................................................................................... 12

    Appendix C (Amendment 647) ........................................................................... 11

# TABLE OF EXHIBITS

A. Personal Statement of Harish Sidhu

B. Statements of Family Members, Friends, and Colleagues

    1. Statement of Rajinder Sidhu

    2. Statement of Sohina K. Sidhu

    3. Statement of Kam Bansal

    4. Statement of Jasjit S. Johal

    5. Statement of Paul C. Barton

    6. Statement of Shekhar Chitnis

    7. Statement of Shiv Grewal

    8. Statement of Janak R. Chopra

    9. Statement of Anita Pande

    10. Statement of Anita DeLeon

    11. Statement of Alice Lai

    12. Statement of Mahesh S. Vyan, M.D.

    13. Statement of Nitin Shah, M.D.

# SENTENCING MEMORANDUM
## INTRODUCTION

Harish "Harry" Sidhu is a 67-year-old first-time offender and the former Mayor of the City of Anaheim. (PSR ¶¶ 21, 100-108, 110).[1] He appears for sentencing after waiving indictment and pleading guilty to a four-count information charging him with destroying emails with the intent to impede or obstruct a federal investigation in violation of 18 U.S.C. § 1519 and false statements in violation of 18 U.S.C. § 1001(a)(2) which relate to a federal investigation of the City's agreement to sell the Angels Stadium site (Counts One and Four); and wire fraud in violation of 18 U.S.C. § 1343 and false statements in violation of 18 U.S.C. § 1001(a)(2) which relate to his evasion of $15,887 in California sales tax on his purchase of a helicopter (Counts Two and Three). (PSR ¶¶ 1-5). Following public disclosure of the investigation, Mr. Sidhu voluntarily resigned as Mayor, cooperated with federal authorities, and made full restitution with interest to the State of California. (PSR ¶¶ 26, 50).

The Probation Office accurately describes Mr. Sidhu's offense conduct as well as his history and characteristics. (PSR ¶¶ 20-48, 100-176). It calculates the advisory sentencing guideline range at 10-16 months and the fine range at $5,000 to $55,000 based on a total offense level 12 and criminal history category I. (PSR ¶¶ 203, 216). This offense level calculation includes a 2-level specific offense characteristic adjustment under U.S.S.G. § 2J1.2(b)(3)(B) for destroying an "essential" document. (PSR ¶¶ 73-76). The Probation Office recommends a variance from the advisory sentencing guideline range based on mitigating factors relating to Mr. Sidhu's history and characteristics, including his educational history, stable employment history, age and health issues. (PSR ¶ 221; USPO Rec. at 6-7). The Probation Office recommends three-years' probation, a $175,000 fine, and 400 hours of community service.

---

[1] "PSR" refers to the Revised Presentence Report filed February 28, 2025. (ECF 33). "USPO Rec." refers to the United States Probation Office's revised recommendation letter filed February 28, 2025. (ECF 32).

6

Mr. Sidhu concurs with the Probation Office's recommendation that he be sentenced to probation but objects to the Probation Office's advisory sentencing guideline calculation, the amount of the fine, and asks for the Court to determine a reasonable amount of community service in light of the facts and the charges to which he pleaded guilty. A 2-level specific offense characteristic adjustment under U.S.S.G. § 2J1.2(b)(3)(B) for destroying an "essential" document does not apply because the deleted emails, while relevant, were not essential to the government's investigation since the government obtained the emails from another source. Without this adjustment, Mr. Sidhu's advisory sentencing guideline range is 8-14 months and the fine range is $4,000 to $40,000 based on a total offense level 11 and criminal history category I. Mr. Sidhu agrees that a variance is appropriate for the reasons noted by the Probation Office as well as his early and extraordinary acceptance of responsibility which, in addition to immediately resigning as Mayor, paying full restitution, and waiving indictment and his appellate rights (PSR ¶ 12), includes his cooperation with the government by providing complete and truthful information about several ongoing matters. Nonetheless, the recommended fine of $175,000 fine (which is more than four times the high end of advisory sentencing guideline range) and 400 hours of community service are greater than necessary to promote respect for the law, punish Mr. Sidhu, and deter others from criminal conduct. Considering the nature and circumstances of the offense, Mr. Sidhu's history and characteristics, and the advisory sentencing guideline range, a sentence of three-years' probation and a $40,000 fine is appropriate.

## STATEMENT OF FACTS

### History and Characteristics of the Defendant

Mr. Sidhu's history and characteristics are accurately detailed in paragraphs 100-176 of the Revised Presentence Report, his personal statement attached hereto as Exhibit A, and the statements of family members, friends, and colleagues attached hereto as Exhibit B. To summarize, Mr. Sidhu was born in India, immigrated to the

United States with $6 in his pocket, and became a naturalized United States citizen. (PSR ¶¶ 110, 114, 119). Through education and hard work, Mr. Sidhu became an engineer and a successful businessman who is now retired. (PSR ¶¶ 113-118, 120, 123-124, 147-152, 157-158, 160-162, 170-174). He has no criminal history (PSR ¶¶ 100-108) and has dedicated the past twenty years of his life to public service by serving on the boards of several community organizations, the Anaheim City Council for eight years, the Orange County Transportation Authority for four years, and as Anaheim Mayor for almost four years. (PSR ¶¶ 154-156, 163-169). He is a devoted husband and father to two adult daughters, has no history of drug or alcohol abuse, and no significant mental health issues. (PSR ¶¶ 121-122, 142-146). He does have several significant medical conditions including a 50% hearing loss in both ears for which he requires hearing aids, a spinal condition that required surgery approximately fifteen years ago and for which he continues to receive treatment, and a serious heart condition that required surgery in 2021 and for which he takes medication. (PSR ¶¶ 129-141).

**Nature and Circumstances of the Offense**

*Counts One and Four: Destruction of Emails and False Statements Relating to the City's Agreement to Sell the Angels Stadium Site*

Mr. Sidhu waived his right to grand jury indictment and pleaded guilty to Counts One and Four of the Information which charge him with destroying emails with the intent to obstruct or impede a federal investigation in violation of 18 U.S.C. § 1519 and false statements in violation of 18 U.S.C. § 1001(a)(2). These counts relate to a federal investigation into an agreement between the City of Anaheim and SRB Management (which is an entity affiliated with the Los Angles Angels major league baseball team) to sell and redevelop the Angels Stadium site. (PSR ¶¶ 22-41). Not charged are bribery, honest services fraud, or any other federal corruption charge.

Mr. Sidhu ran for office on a promise to keep the Angels in the City and believed that the Stadium agreement was in the City's best interests. (PSR ¶¶ 54-55, 58). In 2019, he provided a confidential appraisal of the Stadium site to his long-time political

advisor and Chief Executive Office of the Chamber of Commerce Todd Ament before it was publicly disclosed. (PSR ¶¶ 27, 33, 56). In July 2020, Mr. Sidhu sent an email from his personal email account to Mr. Ament and an Angels consultant with an attached confidential memorandum prepared by City attorneys which discussed the sale terms. (PSR ¶¶ 27, 29). Mr. Sidhu shared this information so that the Angels could purchase the site on beneficial terms. (PSR ¶¶ 27, 29-33, 56). In September 2020, Mr. Sidhu voted in favor of the Stadium agreement without disclosing that he had shared confidential information with Mr. Ament and the Angels consultant. (PSR ¶ 37).

Thereafter, Mr. Ament began cooperating with federal authorities and would later plead guilty to wire fraud, false statements to a bank, and filing a false tax return in an unrelated case. *See United States of America v. Todd Ament*, No. 8:22-cr-00081-FLA (C.D. Cal.). In late-2021 and early 2022 (more than fifteen months after approval of the Stadium agreement), Mr. Ament surreptitiously recorded Mr. Sidhu boasting that he expected the Angels to contribute $1 million to his reelection campaign. (PSR ¶¶ 34-36, 58). Mr. Sidhu never agreed with the Angels to use his position as mayor to approve the stadium deal, he never asked the Angels for a campaign donation after the Stadium deal was approved, and the Angels never made any such campaign donation. (PSR ¶ 58; USPO Rec. at 6). Indeed, Mr. Sidhu has never been charged with bribery, honest services fraud, or any other public corruption offense.

In early-2022, the Orange County Grand Jury began to publicly investigate the Stadium agreement, and Mr. Ament (who was still cooperating with federal authorities) told Mr. Sidhu that he received a federal grand jury subpoena. (PSR ¶ 29). Thereafter, Mr. Sidhu deleted emails from his personal email account (including the July 21, 2020 email) with the intent to impede and obstruct the federal investigation because he feared that the investigation would be used against him in his reelection campaign. (PSR ¶¶ 29-32, 57, 60). Although Mr. Sidhu's email service permanently deleted the emails after thirty days, Mr. Sidhu's conduct did not actually impede or obstruct the

9

federal investigation because federal agents obtained the deleted emails from Mr. Ament. (PSR ¶¶ 29-33, 38).

On May 12, 2022, federal agents approached Mr. Sidhu who was walking alone in a parking lot after leaving a political event and surreptitiously recorded their surprise interview.(PSR ¶ 39). When questioned about the negotiations over the Stadium agreement and his emails, Mr. Sidhu panicked over how his political opponents would characterize his conduct if the deleted emails became public and falsely stated that he did not expect to receive anything from the Angels, did not conduct City business from his personal email account, and did not recall providing information about the Stadium agreement to the Angels consultant during the negotiations. (PSR ¶¶ 39-41, 59-60). Upon learning that he was the target of a federal investigation, Mr. Sidhu resigned his position as Mayor. (PSR ¶¶ 26, 163).

### *Counts Two and Three: Wire Fraud and False Statements Relating to the Evasion of Sales Tax on a Helicopter Purchase*

Mr. Sidhu waived his right to grand jury indictment and pleaded guilty to Counts Two and Four of the Information which charge him with wire fraud in violation of 18 U.S.C. § 1343 and false statements in violation of 18 U.S.C. § 1001(a)(2) relating to his evasion of sales tax on a helicopter purchase. Specifically, in October and November 2020, Mr. Sidhu falsely stated in sales documents and a Federal Aviation Administration registration form that he resided in the State of Arizona. (PSR ¶¶ 42-48). He did so to avoid paying approximately $15,887 of sales tax to the State of California. (PSR ¶¶ 42-48). Since pleading guilty, Mr. Sidhu filed corrected documents with the FAA and paid $18,112 to the State of California for the uncollected sales tax and interest. (PSR ¶ 50).

**THE ADVISORY SENTENCING GUIDELINE RANGE IS 8-14 MONTHS AND THE FINE RANGE IS $4,000 TO $40,000**

Mr. Sidhu objects to the Probation Office's assessment of a 2-level specific offense characteristic adjustment pursuant to U.S.S.G. § 2J1.2(b)(3)(B) in calculating

10

the adjusted offense level for Counts One and Four. (PSR ¶¶ 73-76). This adjustment provides for a 2-level increase "[i]f the offense … involved the selection of any essential or especially probative record, document, or tangible object, to destroy or alter …." U.S.S.G. § 2J1.2(b)(3)(B). This adjustment was added following passage of the Sarbanes-Oxley Act of 2002, Pub. L. No. 107-56, 116 Stat. 745, pursuant to Congress' directive to "review and amend, as appropriate, the Federal Sentencing Guidelines and related policy statements to ensure that … existing enhancements contained in United States Sentencing Guideline 2J1.2 relating to obstruction of justice are adequate in cases where … the destruction … of evidence involves … the selection of evidence that is particularly probative or essential to the investigation …." *Id.* § 805(a), 116 Stat. 802; *see also* U.S.S.G. App. C at 767 (Amendment 647). In adding this adjustment, the Sentencing Commission recognized that Congress sought to ensure that the "guideline offense levels and enhancement for obstruction of justice offenses are adequate *in cases where documents or other physical evidence are actually destroyed* …." U.S.S.G. App. C at 767 (Amendment 647) (emphasis added).

      The specific offense adjustment for destroying an "essential or especially probative" document does not apply in this case. The deleted emails, while *relevant* to the federal investigation, were not *essential or especially probative* to the investigation because Mr. Ament, who was cooperating with the authorities during the investigation of Mr. Sidhu, provided the emails to federal agents. For these reasons, Mr. Sidhu's conduct did not actually destroy any evidence, much less any evidence that was "essential or especially probative" to the investigation.

      Without the adjustment under § 2J1.2(b)(3)(B), Mr. Sidhu's adjusted offense level for Counts One and Four is 14. (PSR ¶ 72). As this is within 4 levels of the adjusted offense level for Counts Two and Three, the total number of units is 2 which results in a 2-level multiple count adjustment, U.S.S.G. § 3D1.4, and a combined adjusted offense level 16. (PSR ¶ 14). With a 3-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1 (PSR ¶¶ 94-95), and an additional 2-level

11

reduction for being a zero-point offender pursuant to U.S.S.G. § 4C1.1(a) (PSR ¶¶ 96-97), Mr. Sidhu total offense level is 11. With a criminal history category I (PSR ¶ 105), Mr. Sidhu's sentencing guideline range is properly calculated at 8-14 months and his fine range is $4,000 to $40,000. U.S.S.G. Ch. 5, Pt. A (Sentencing Table); U.S.S.G. § 5E1.2(a)(3).

## THE COURT SHOULD SENTENCE MR. SIDHU TO THREE YEARS' PROBATION AND A $40,000 FINE

Section 3553(a)(2) of title 18 is the "overarching provision" of the Sentencing Reform Act. *Kimbrough v. United States*, 552 U.S. 85, 101 (2007). It provides as follows:

> the court shall impose a sentence sufficient but not greater than necessary to . . . reflect the seriousness of the offense, . . . promote respect for the law, and . . . provide just punishment for the offense; . . . afford adequate deterrence to criminal conduct; . . . protect the public from further crimes of the defendant; and . . . provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . .

18 U.S.C. § 3553(a)(2) (emphasis added). Section 3553(a) requires the court to consider the nature and circumstances of the offense and the history and characteristics of the defendant, 18 U.S.C. § 3553(a)(1); the kinds of sentences available, 18 U.S.C. § 3553(a)(3); the sentencing guidelines, 18 U.S.C. § 3553(a)(4); policy statements by the Sentencing Commission, 18 U.S.C. § 3553(a)(5); the need to avoid unwarranted disparities among defendants with similar records who have been convicted of similar conduct, 18 U.S.C. § 3553(a)(6); and the need to provide restitution. 18 U.S.C. § 3553(a)(7).

While a sentencing court may use the guideline range as the "starting point and the initial benchmark," *Gall v. United States*, 552 U.S. 38, 49 (2007); *Kimbrough*, 552 U.S. at 108, it may not presume that a sentence within the guideline range is

12

reasonable, *Nelson v. United States*, 555 U.S. 350, 352 (2009); *Gall*, 552 U.S. at 50; *Rita v. United States*, 551 U.S. 338, 351 (2007), or afford the guideline range more weight than any other factor. *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (en banc). The court may sentence below the guidelines when a "[g]uidelines sentence itself fails to properly reflect § 3553(a) considerations," *Rita*, 551 U.S. at 351, or when the court has a "policy disagreement" with a particular guideline, *Spears v. United States*, 555 U.S. 261, 264-66 (2009) (per curiam); *Kimbrough*, 552 U.S. at 109.

  Three-years' probation and a fine at the high end of the advisory sentencing guideline range is sufficient to reflect the seriousness of the offenses, promote respect for the law, and provide just punishment for the offense. Mr. Sidhu has no criminal record and decades of public service. He immediately resigned as Mayor upon being identified as a target of the federal investigation, waived his rights to indictment and appeal, and already paid full restitution with interest. The government has agreed to recommend a 1-level variance for Mr. Sidhu's early acceptance of responsibility. (PSR § 12). Mr. Sidhu also fully cooperated with federal authorities in their investigation of others by providing complete and truthful information to federal prosecutors and agents about several matters that are the subject of ongoing federal investigations.

  By deleting emails and making false statements to federal agents, Mr. Sidhu admittedly sought to impede and obstruct a federal investigation, but he did not seek to cover-up criminal conduct and never committed an act of political corruption. The Probation Office's characterization of the offense conduct in its recommendation letter is independent and accurate. Mr. Sidhu exercised extraordinarily poor judgment believing that his political opponents would use the information against him in his reelection campaign. Although criminal, Mr. Sidhu's conduct did not actually obstruct or impede the federal investigation because federal agents obtained the deleted emails from Mr. Ament. Mr. Sidhu's false registration of his helicopter in the State of Arizona to evade paying California sales tax is deserving of punishment. However, given that Mr. Sidhu has already paid full restitution with interest to the State of California,

probation and an additional fine at the high end of the advisory sentencing guideline range, which would be more than twice the evaded sales tax, is a substantial penalty sufficient to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, and deter similar conduct by others in the future.

Given that Mr. Sidhu will be ordered to pay a fine, 18 U.S.C. § 3561(c)(1) does not require community service as a condition of probation. (PSR ¶¶ 208-209). Although a condition of community service is certainly within the discretion of the Court, 400 hours of community service on top of a three-year term of probation and a fine at the high end of the advisory sentencing guideline range is a greater deprivation of liberty than is reasonably necessary to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, and deter others from similar conduct. 18 U.S.C. § 3563(b). For these reasons, the Court should simply sentence Mr. Sidhu to three-years' probation, a $40,000 fine, and, if deemed appropriate, a reasonable amount of community service.

Should the Court decline to afford Mr. Sidhu a variance, his 8-14 month sentencing guideline range is within Zone B of the Sentencing Table and, therefore, may be satisfied by probation with the condition a condition of home confinement. U.S.S.G. § 5B1.1(a)(2), or extensive community service, as recommended by Probation. Under such circumstances, if the Court deems necessary, a sentence of three-years probation with the condition that he serve the minimum term of imprisonment on home confinement would be appropriate.

Respectfully submitted,

Dated: March 14, 2025

/s/
PAUL S. MEYER
CRAIG WILKE
Attorneys for Defendant
Harish Singh Sidhu