PAUL S. MEYER (51146)
pmeyer@meyerlawoc.com
PAUL S. MEYER, A PROFESSIONAL CORP.
695 Town Center Drive, Suite 875
Costa Mesa, California 92626
Telephone (714) 754-6500
Facsimile  (714) 979-9047

CRAIG WILKE (150728)
craig@craigwilkelaw.com
305 N. Harbor Blvd., Suite 216
Fullerton, California 92832-1901
Telephone (714) 870-8900
Facsimile  (714) 879-2278

Attorneys for Defendant
HARISH SINGH SIDHU

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>HARISH SINGH SIDHU,<br><br>    Defendant. | Case No. 8:23-cr-00114-JWH<br><br>**DEFENDANT'S REPLY TO GOVERNMENT'S SENTENCING POSITION**<br><br>Sentencing Date:  March 28, 2025<br>Sentencing Time:  2:00 p.m. |

1. <u>**The deleted emails were not essential or especially probative.**</u>

The government argues that Mr. Sidhu's admission that he deleted the emails "because [he] was afraid that they would become public and make [him] look bad politically in [his] reelection campaign" is proof that the emails were "essential or especially probative" such that the 2-level specific offense characteristic adjustment

1 pursuant to U.S.S.G. § 2J1.2(b)(3)(B) is warranted. (Gov't Sent. Pos. at 8). In other
2 words, the government argues that Mr. Sidhu's sentence should be increased because
3 the destroyed emails were relevant to its investigation. This argument misconstrues the
4 guideline.
5      Under the government's broad interpretation of the guideline, the adjustment
6 would apply in every case. To be criminally culpable, an offender must knowingly
7 destroy documents "with the intent to impede, obstruct, or influence the investigation or
8 proper administration of any matter within the jurisdiction of any department or agency
9 of the United States …." 18 U.S.C. § 1519. A document that is knowingly destroyed
10 with the intent to impede, obstruct, or influence a federal investigation is necessarily
11 relevant to the investigation. Applying the adjustment because a document that is
12 relevant to a federal investigation is destroyed fails to distinguish more aggravated
13 conduct that warrants an increased sentence and to which the specific offense
14 characteristic adjustment under U.S.S.G. § 2J1.2(b)(3)(B) applies.
15      The government has the burden of proving that the adjustment applies. *United*
16 *States v. Ameline*, 409 F.3d 1073, 1086 (9th Cir. 2005) (en banc). Under the plain
17 language of the guideline, the adjustment applies if the offense "involved the selection
18 of any *essential or especially probative* … document … to destroy …." U.S.S.G.
19 § 2J1.2(b)(3)(B) (emphasis added). The Sentencing Commission has stated that the
20 adjustment is intended increase punishment when the offense involves the destruction
21 of documents that are "actually destroyed." U.S.S.G. App. C at 767 (Amendment 647).
22      In this case, the deleted emails were not essential or especially probative to the
23 federal investigation because the government obtained the deleted emails from Todd
24 Ament who was a recipient of the emails and cooperated with federal authorities in its
25 investigation of Mr. Sidhu. There is no evidence that Mr. Sidhu selected emails to
26 destroy beyond those in his personal email account, nor any evidence that Mr. Sidhu's
27 personal email account from which he deleted the emails had evidentiary significance
28 beyond the content of the deleted emails. Because the government has failed to meet its

burden to prove that the offense involved the selection of an "essential or especially probative" document, the Court should not apply the 2-level specific offense characteristic adjustment under U.S.S.G. § 2J1.2(b)(3)(B).

**2.      Three years probation and a $40,000 fine is sufficient to punish Mr. Sidhu and deter others from committing similar crimes.**

The government recommends a custodial sentence as if Mr. Sidhu has been convicted of a "public-corruption" offense involving "breach of the public trust." (ECF 35: 6-7). He has not. Although Mr. Sidhu was the subject of a thorough and lengthy investigation relating to the since-rescinded stadium purchase agreement between the City and the Angels, he has never been charged with much less convicted of any public corruption offense such as bribery or honest service fraud. In fact, the government has agreed to not prosecute Mr. Sidhu for additional crimes arising out of the stipulated facts in exchange for his guilty pleas to deleting emails from his personal email account relating to the stadium negotiations with the intent to impede or obstruct a federal investigation in violation of 18 U.S.C. § 1519, defrauding the State of California of sales tax on his helicopter purchase in violation of 18 U.S.C. § 1343, and two related counts of false statements in violation of 18 U.S.C. § 1001(a). (Plea Agr. at 2-4). The government has also agreed that the cross-reference to the accessory-after-the-fact guideline which applies if the "[i]f the offense [including all relevant conduct] involved obstructing the investigation or prosecution of a criminal offense," U.S.S.G. §§ 1B1.3(a)(iii); 2J1.2(c), does not apply in this case. (Plea Agr. at 17). Having not prosecuted Mr. Sidhu for bribery or honest services fraud, agreeing to not prosecute him for any additional offense based on the stipulated facts, and stipulating that his relevant conduct did not involve obstructing the investigation or prosecution of any other offense, the government's argument for a custodial sentence to deter corrupt public officials is not well taken.

There is no evidence that Mr. Sidhu acted corruptly or otherwise breached the public's trust. Mr. Sidhu consistently and publicly supported keeping the Angels in

3

1  Anaheim as he believed that the Angels provided a substantial economic benefit to the
2  City and its residents. (PSR ¶¶ 54-55). Mr. Sidhu's disclosure of the appraisal range to
3  Mr. Ament prior to its public disclosure had no effect on the negotiations over the
4  Stadium deal. (PSR ¶ 33). The confidential memo from City attorneys that Mr. Sidhu
5  shared with Mr. Ament and the Angels consultant did not reveal any information to the
6  Angels beyond that which the City had already publicly acknowledged --- *i.e.*, the
7  purchase price would be much higher without the agreement's obligation to maintain at
8  least 12,500 parking spaces. (PSR ¶ 30). While Mr. Sidhu admittedly shared the memo
9  so that the Angels could buy the Stadium on terms beneficial to the Angels (PSR ¶ 27),
10 there is no evidence that, in doing so, Mr. Sidhu intended to compromise the City's
11 position in the negotiations. The emails between Mr. Sidhu, the Angels consultant,
12 other City Council members, and City Staff about preparation for the City Council
13 meeting were embarrassing but did not breach any public trust. (PSR ¶¶ 31-32).
14 Finally, while Mr. Sidhu's musings to his political advisor more than fifteen months
15 after approval of the Stadium agreement about seeking a campaign contribution from
16 the Angels were fodder for his political opponents, they are not evidence of quid pro
17 quo corruption particularly since Mr. Sidhu never agreed to use his position to approve
18 the Stadium deal and never asked for or received a campaign donation from the Angels
19 after voting to approve the deal. (PSR ¶ 58; USPO Rec. at 6).
20          Relying on the stipulated facts, the Probation Office accurately describes the
21 offense conduct and thoughtfully concludes that a probationary sentence is sufficient
22 but not greater than necessary to punish Mr. Sidhu and deter others from similar
23 criminal conduct. (USPO Rec. at 6-7). Although Mr. Sidhu was an elected official
24 during the relevant period, he did not act corruptly or otherwise breach the public trust
25 in committing the crimes, and he fully accepted responsibility far beyond that required
26 for the adjustment under U.S.S.G. § 3E1.1 by immediately resigning from office,
27 immediately paying full restitution with interest, waiving his grand jury and appellate
28 rights, agreeing to a "robust factual basis" for the guilty pleas, and cooperating with the

1 government. (PSR ¶ 12). Given the nature and circumstances of the offense, as well as Mr. Sidhu's history and characteristics, three-years' probation as recommended by the Probation Office and a $40,000 fine which is at the high end of the fine range is appropriate. Should the Court determine that a variance to Zone A of the Sentencing Table is not appropriate, Mr. Sidhu requests that the Court allow him to serve the minimum term of imprisonment in home confinement as a condition of probation. U.S.S.G. § 5B1.2(a)(2).

Respectfully submitted,

Dated:  March 20, 2025

                /s/
PAUL S. MEYER
CRAIG WILKE
Attorneys for Defendant
Harish Singh Sidhu

5